NINLLIAT *v.* SURINACH ET AL.

APPEAL from the District Court of Mayagüez.

No. 691.—Decided April 2, 1912.

RES JUDICATA—SUIT IN EQUITY—DISMISSAL OF COMPLAINT ON DEMURRER.—The
principles governing the plea in demurrer of *res judicata* have been explained
by this court in the cases of *González* v. *Méndez et al.*, 15 P. R. R., 682,
and *Calaf et al.* v. *Calaf*, 17 P. R. R., 210. In the case at bar the defend-
ant pleaded *res judicata* in a demurrer to the complaint alleging that
another materially identical case had been decided in the Federal court. The
Federal court sustained a demurrer to the bill in equity and entered final
judgment which generally amounts to a dismissal of the complaint and is
equivalent in equity to a judgment on the merits. *Held:* That the necessary
similarity exists between the case at bar and that decided by the Federal
court and that in both are to be found the elements of identity necessary
to sustain the plea of *res judicata*.

The facts are stated in the opinion.

*Messrs. José Sabater* and *J. S. Amill Negroni* for ap-
pellant.

*Messrs. N. B. K. Pettingill* and *Fernando Vázquez* for
respondents.

MR. JUSTICE WOLF delivered the opinion of the court.

The primary question in this case arises out of a plea of
*res adjudicata.*

To a complaint or bill in the United States District Court

of Porto Rico a demurrer was interposed. The demurrer was referred to a special master, who found as follows:

"Pursuant to the order of court herein filed on May 16, 1910, I, the undersigned, Special Master in Chancery, on Wednesday, May 18, 1910, heard the parties herein, the complainant being represented by José Sabater, Esq., and the respondents by Frederick L. Cornwell, Esq. The suit is in equity and the bill of complaint is what is commonly known as a bill to quiet title. The complaint shows the legal title is in the respondents. The respondents herein filed their demurrer to bill of complaint and the substantial grounds of same are: First, for want of equity; second, that the complaint does not lie for the reason that the legal title is in the respondents; third, that respondents are third parties according to the mortgage law and general statutes of Porto Rico; fourth, that no fact is set out to show any knowledge on part of respondents as to transactions between complainant and Arán. After the argument of the demurrer both counsel for complainant and respondents filed a memorandum of authorities, and after due consideration of argument and authorities filed, I, the master, do hereby hold that on the state of facts as set out in the complaint the complainant is not entitled to the relief prayed for, as the bill of complaint clearly shows the legal title to the property in question to be in the respondents. *Orton* v. *Smith,* 59 U. S., 263; *Frost* v. *Spitley,* 121 U. S., 552; *Dick* v. *Foraker,* 155 U. S., 413. I further hold that under the Mortgage Law of Porto Rico the decisions of the Supreme Court of Porto Rico, of December 30, 1899; December 20, 1901; December 15, 1902; December 25, 1903, and the two Supreme Court decisions of the U. S. in *Todd* v. *Romeu,* that the respondents herein are third parties in accordance with law, and that the action does not lie; therefore, the demurrer is sustained and the bill dismissed, complainant to pay the costs. May 24, 1910, at Mayagüez, Porto Rico. (Signed) B. J. Horton."

This report was made on May 24, 1910. On August 25, 1910, a final decree was entered by which the court sustained the motion of respondents to strike from the files certain exceptions filed by the complainant to the report of the special master and ordered and adjudged and decreed that the report of the said special master be confirmed as it finds that the bill of complaint is without equity and that the bill be dismissed.

On August 22, 1910, the present complaint was filed in the District Court of Mayagüez, to which, among other defenses, the defense of *res adjudicata* was interposed. The "bill" in the Federal Court reads as follows:

"The complainant, Luis Ninlliat y Ninlliat, a citizen of the Republic of France, resident of Mayagüez, Porto Rico, U. S. A., brings this bill of complaint against Camilo Suriñach, a subject of the King of Spain, and residing in the city of Mayagüez, Porto Rico, and his minor children, infants under the age of 21 years, named Carmen Rita, María Antonia, Ricardo and Camilo Suriñach, residing also in the city of Mayagüez, P. R., living under the care and protection of their father, the said Camilo Suriñach."

And thereupon your orator complains and says:

"I. That for about one year, more or less, before the second day of April of the year 1898, your orator was engaged and had business relations with a copartnership doing business in the city of Mayagüez, P. R., under the name and style of J. Tornabells & Co., and as a result of transactions and business, said copartnership sold to your orator for a valuable consideration and in good faith, the following piece of land:

" 'A lot of land containing 2,046 superficial meters situated in the prolongation of Candelaria Street at the place called Boulevard Balboa, of this city, and bounded on the north by the said street, on the south by the Hacienda Carmelita, on the east by property of Doña Clara Cristy, and on the west by property of Don Alfredo Cristy.'

"II. That although said piece of land was sold to your orator and your orator at the time of the sale took possession of the land and managed it as owner of the same, no deed or instrument in writing was made or executed by said copartnership, J. Tornabells & Co., to evidence the sale, in favor of your orator, and as your orator believed himself to be and was at all times, and now is the owner in fact of said land, he built on said land, at his own expense, two dwelling houses and collects and receives at all times since he built them, the rents and profits of the same as the owner thereof and recognized as such by his dwellers.

"III. That after being in possession, as the owner in fact of said piece of land, for about a year, and no instrument in writing having been executed by the copartnership, J. Tornabells & Co., as evidence of the sale to your orator, your orator demanded of said co-

partnership to grant the proper deed, and thereupon on the second day of April, one thousand eight hundred and ninety-eight, J. Tornabells & Co. executed to your orator deed No. 98, signed before the notary public, Juan Z. Rodríguez, of Mayagüez, P. R., by which deed the sale of the piece of land before described was perfected in accordance to law and inscribed or registered in the Registry of Property of Mayagüez, at page 245, volume 45, *finca* 659, inscription 6th.

"IV. That the aforesaid sale of the land described was entered into for the sum of four thousand five hundred *pesos,* provincial money, and the deed granted for that purpose, by J. Tornabells & Co., in favor of your orator, was inscribed in the registry of property, as aforesaid in accordance with the Spanish Mortgage Law, and ever since that time, to wit, the second day of April of the year one thousand eight hundred and ninety-eight, and at all times thereafter was, and now is, in the possession of said piece of land and is the owner of the same.

"V. That your orator on the second day of April, 1898, by deed No. 99, executed before the aforesaid notary, Juan Z. Rodríguez, in the city of Mayagüez, P. R., granted and conveyed in favor of one Luis Arán Lancy, the said piece of land, described in paragraph 1 of this bill; but a proviso or condition was inserted therein by which it was covenanted that if your orator should, within three years from date, pay to the said Luis Arán Lancy the price of sale quoted in said deed, then the said deed should be void and the said Luis Arán Lancy would sell back to your orator the aforesaid land; but if the term of three years was passed without your orator being able to refund the sale price, then the property should go to Luis Arán Lancy, without his obligation to sell it back to your orator. But it was also covenanted that in case that the period of three years would pass or elapse without your orator paying the amount of the sale price, then your orator would continue in possession of the piece of land referred to, for an extended period of two years more, at the end of which your orator being obliged to pay to Arán the sum of six thousand *pesos,* provincial money, if he wanted to redeem the property and be the sole owner thereof. This deed referred to in this paragraph was inscribed in the Registry of the Property of Mayagüez, P. R., on page 245, *vuelto,* volume 45, *finca* 659, inscription 7th.

"VI. That the period of three years aforesaid elapsed and your orator was unable to pay to Luis Arán Lancy the amount of the sale price, referred to in paragraph 3 of this bill, and Arán, in accordance with the provisions of the Spanish Mortgage Law in force in

Porto Rico, caused an inscription to be made on the margin of page 245, volume 45, form 659, to the effect that the first part of the covenant or condition named in deed No. 99, referred to in said paragraph 3 of this bill, was not complied with on the part of your orator, and that, therefore, the piece of land above-described was his and inscribed in his name; but in accordance with the second part of the proviso inserted in said deed, your orator was to continue and remain in the possession of the land for the extended period of two years, and so he remained in possession of the land, although the same was inscribed in the name and favor of Arán.

"VII. That before the above-referred to extended period of two years, to wit, on the fifth day of September, one thousand nine hundred and two, had elapsed, Luis Arán Lancy executed deed No. 561 before the notary public, Mariano Riera Palmer, of Mayagüez, P. R., by which said Arán granted and conveyed in fee of said piece of land to your orator for the sum of three thousand and three hundred dollars ($3,300), U. S. currency, and your orator paid to Arán the sum of one thousand one hundred dollars ($1,100) in cash, and for the balance of two thousand and two hundred dollars ($2,200) your orator gave Arán a bond and mortgage over the said land, and as additional security your orator also mortgaged the two dwelling houses that he had previously built on the land, as pointed out in paragraph 2 of this bill, which balance of $2,200 was to be paid by your orator as follows: One thousand one hundred dollars ($1,100) on the 5th day of September, 1903, and one thousand one hundred dollars ($1,100) on the next following 5th day of September, 1904. This deed, your orator says, was not inscribed or registered in the registry of property.

"VIII. That on the 29th day of October, 1905, Luis Arán Lancy, the mortgagee above-named, died in this city of Mayagüez, P. R., and after his death, to wit, on the 9th day of March, 1909, the administratrix of his estate, duly appointed as such by decree of the District Court of Mayagüez, P. R., by deed No. 144, and before the notary public, Mariano Riera Palmer, canceled and annulled the said bond and mortgage in favor of your orator the said bond and mortgage given to Arán over the said piece of land and dwelling houses. But your orator further says that the said bond and mortgage for the sum of $2,200, and the said deed of cancellation and annulment, were never inscribed in the registry of property, and due to this circumstance the property remained in said registry of property as if belonging to Luis Arán Lancy, when in fact your orator was and is the true, just and real owner of the same.

"IX. And your orator further shows unto your honor that the defendants, Carmen Rita, María Antonia, Ricardo and Camilo Suriñach, minor children of the defendant, Camilo Suriñach, aided and assisted by their father, the said Camilo Suriñach, instituted and prosecuted an action at law in this honorable court, under No. 202, against the estate of Luis Arán Lancy and obtained a judgment in said action for the sum of three thousand dollars and caused an execution to be issued on said judgment, and by virtue of the same the marshal of this honorable court inquired and obtained information of the Registrar of Property of Mayagüez, P. R., to the end that the above-described piece of land was inscribed in the registry of property, in the name and favor of Luis Arán Lancy and, therefore, the said marshal levied on the said piece of land belonging to your orator and whereon your orator built the two dwelling houses referred to in paragraph 2 of this bill, and the said marshal advertised the land for sale in a daily newspaper of very scarce circulation, published in this city of Mayagüez, P. R. But in said advertisement, neither in the return of execution made by the marshal, as your orator afterwards has had an opportunity to see and be sure about, no reference was made to the said dwelling houses built by your orator on said land; and the marshal, as your orator believes and is informed, never was or had been on the spot when he levied on the said land and advertised the same for sale, but he only levied and advertised just because the land was inscribed in the Registry of Property of Mayagüez, P. R., in the name and favor of Luis Arán Lancy, and for that reason he believed the said Luis Arán Lancy to be the owner of said land.

"X. Your orator further shows unto your honor that the said piece of land was sold by the marshal of this court on the 13th day of September, 1909, to the best and highest bidder, to wit, one Fernando Vázquez, who is an attorney at law, practicing in the district of Mayagüez, P. R., and then and there the said Fernando Vázquez as agent and commissioned by the said defendant, Camilo Suriñach, bid for the land the small sum of money of three hundred dollars ($300) when he well knew that the said land was worth nine times more than such small sum.

"XI. Your orator further shows unto your honor that the defendant, Camilo Suriñach, prior to the time when your orator was engaged in business relations with the copartnership, J. Tornabells & Co., and prior to the sale by said copartnership of the above-referred-to piece of land to your orator, he, Camilo Suriñach, was a confidential employe of said copartnership, J. Tornabells & Co., to

wit, he was the cashier or treasurer of said copartnership, and as such he had knowledge of all the transactions entered into between said copartnership and your orator, and said Camilo Suriñach intervened in the management of the affairs of said copartnership and was interested in its progress; and he specially had knowledge and believed that said piece of land was sold to your orator, and he now knows and believes that in good conscience your orator is the true and just owner of the same.

"XII. Your orator further shows unto your honor that though the defendant, Camilo Suriñach, well knew that the said land did not belong to the estate of Luis Arán Lancy, he nevertheless consented and aided *mala fide* to the levy and sale of said piece of land and, by virtue of the judgment he obtained in the action at law instituted by him in representation of his minor children aforesaid, he has wilfully, maliciously and fraudulently interfered with the right of property that your orator has of the said land, with the sole purpose of illegally and fraudulently depriving your orator of said land.

"XIII. And your orator further shows unto your honor that the defendant, Camilo Suriñach, in order not to appear as the perpetrator of the fraud that he is trying to commit against your orator, he commissioned an agent, to wit, one Fernando Vázquez as aforesaid, his attorney, to bid for said piece of land, so that he, Camilo Suriñach, might not appear as the true buyer and perpetrator of the usurpation directed against your orator's right of property.

"XIV. And your orator further shows unto your honor that the above-referred sale was advertised in a newspaper of very scarce circulation in the city of Mayagüez, P. R., to wit, *La Bandera Americana,* published in this city, and in said advertisement no reference was made to the dwelling houses that your orator built on said land, and for this reason and also because of the scarce circulation of said newspaper, not only your orator but neither the defendant in said action at law, Francisca Arán, as administratrix of the estate of Luis Arán Lancy, had any knowledge or information whatever that this property or piece of land was to be sold in satisfaction of a judgment; and the defendant, Camilo Suriñach, by these wilful, malicious and fraudulent means, and working in the darkness, has interfered and has the intention of depriving your orator of the piece of land as aforesaid.

"XV. And your orator further shows unto your honor that although the marshal only levied on and sold the piece of land referred to in this bill, for the reason that the land was the only thing and property that appeared on said registry in favor and name of Luis

Arán Lancy, nevertheless and spite of the knowledge the said defendant has had at all times of all the facts in relation to this bill, he, Camilo Suriñach, the defendant herein, has gone personally to the place where said land is situated in this city early during the last month of March of this year, and then and there, in bad faith and with the purpose of defrauding your orator, has informed the dwellers of the two houses built on the land by your orator, as aforesaid, and though said houses were not levied on or sold by the marshal of this court, that he, Camilo Suriñach, the defendant herein, is the sole and rightful owner of said land and houses, and instructed and intimated the dwellers to recognize him as such and pay him the rents and profits of said dwelling houses, all to the damage of your orator and acting in bad faith and intent.

"To the end, therefore, that your orator may have that relief which he can only obtain in a court of equity, and inasmuch as your orator is remediless in the premises at and by the strict rule of the common law and of Spanish Mortgage Law, and is only relievable in a court of equity, where matters of this kind are properly cognizable and reviewable, and to the end, therefore, that the defendants may, if they can, show why your orator should not have relief hereby prayed and may make a full disclosure and discovery of all the matters aforesaid, and according to the best and utmost of their knowledge, remembrance, information and belief, full, true, direct and perfect answer make to the matters hereinbefore stated and charged.

"Wherefore, your orator prays that the said levy and sale issued and made by the marshal of this honorable court, in the said action at law instituted by the defendants against the estate of Luis Arán Lancy, and by virtue of which the above-described piece of land was granted and conveyed to one Fernando Vázquez, the agent for the defendants, and who bought for and in favor of the minor children of Camilo Suriñach, as aforesaid, be set aside, annulled and held for naught and that the defendants be required to surrender up the deed executed by the marshal of this court in their favor, to be canceled; and that said defendants and each of them be forever restrained and enjoined from setting up or claiming any estate, right, title, or interest in or to the premises described in paragraph 1 of this bill, and that complainant be decreed to be the owner thereof and entitled to the possession of the same; and that a writ be directed to the Registrar of Property of Mayagüez, P. R., commanding him to cancel any inscription made in the name or favor of the defendants herein over the said land, and on page 245 of volume 45, farm 659, of said registry.

"And that your orator may have such further or such other relief as the nature of the case may require and as to this court may seem proper and agreeable to equity.

"May it please your honor to grant unto your orator a writ of subpoena to be directed to the said Camilo Suriñach and his minor children aforesaid, commanding them and each of them, by a certain day and under a certain penalty to be inserted therein, to be and appear in this court on some day therein named, and then and there to answer the premises and to abide by and perform such order and decree therein as may be passed herein as shall be agreeable to equity and good conscience. And your orator will ever pray, etc. (Signed) Luis Ninlliat, Complainant *Pro se.* United States of America, District of Mayagüez, Porto Rico, ss. On this 4th day of April, 1910, before me personally appeared Luis Ninlliat y Ninlliat, the complainant above-named, who being by me duly sworn, deposes and says: That he is the complainant in the above bill, and that he has read the foregoing bill of complaint and knows the contents thereof, and that the same is true of his own knowledge, except as to the matters therein stated on information and belief, and as to those matters he believes it to be true. (Signed) Luis Ninlliat. Sworn to and subscribed before me, on this 4th day of April, 1910. (Signed) John L. Gay, Clerk U. S. District Court of Porto Rico. By Ricardo Nadal, Deputy. True Copy. Attest: John L. Gay, Clerk U. S. District Court of Porto Rico. (Signed) By Ricardo Nadal, Deputy."

The complaint in the District Court of Mayagüez reads as follows:

"In the District Court of the District of Mayagüez, P. R. *Luis Ninlliat y Ninlliat* v. *Carmen Rita, Ricardo, Camilo and María Antonia Suriñach y Rivera,* minors, represented by their father, Camilo Suriñach. Action of nullity and cancellation. Complaint. Comes now the plaintiff in the above-entitled cause, by his subscribing attorneys, and as his cause of action alleges:

"I. That under date of April 2, 1898, the plaintiff bought from the firm of J. Tornabells & Co., of this city, a city lot the description of which is as follows:

"'A lot measuring 2,046 square meters located on the prolongation of Candelaria Street of this city at the place called Boulevard Balboa, bounded as follows: On the north by said street, on the south by lands of the plantation "Carmelita," on the east by a lot of Doña Clara Cristy, and on the west by another of Don Alfredo Cristy.'

"Said sale appears from the deed No. 98 executed in this city on the 2d of April, 1898, before the notary, Juan Z. Rodríguez, a copy of which, duly certified by said notary, was inscribed in book 45 of this city at page 245, property No. 659, duplicate, sixth inscription, and which is filed with this complaint marked 'Exhibit A.'

"II. That the plaintiff sold the above-described lot to Luis Arán y Lancy by deed No. 99 executed before the notary, Juan Z. Rodríguez, in this city on the 2d of April, 1898, which deed was inscribed in the registry of property of this city at page 245, turned, of book 45 of this city, property 659, duplicate, seventh inscription, and which is filed with this complaint marked 'Exhibit B' in order that it may be considered as a part thereof.

"That said sale was agreed upon and consummated under the following condition:

" 'Third, this sale is made with the condition that Ninlliat, from and after yesterday—that is, from and after the first day of this month and until the last day of each month for the term of three years, reckoning from said day of this month—shall enjoy the possession of said property, paying to Arán as rental the sum of sixty dollars monthly; and that if, during that term of three years, Ninlliat returns to Arán the six thousand *pesos* referred to, the latter will resell to the former the entire property in the condition in which it may be at the hour when Ninlliat reacquires it; it being clearly understood that if that term expires without the repayment of the specified six thousand *pesos,* Arán shall be freed from the obligation of reselling the property to Ninlliat; but under these circumstances Arán himself agrees that, as soon as placed in possession of the property, it shall be redelivered to Ninlliat for two years more so that he may continue enjoying its mesne profits in such form as he sees fit, provided that he keeps it in good condition and continues paying the sixty *pesos* monthly rental; it being finally agreed that during these other two years so extended Arán will resell the property to Ninlliat if the latter returns to him the six thousand *pesos* which has been to-day agreed upon as the price of the whole property after the buildings described have been put in a habitable state.'

"This condition appears in the third clause of the deed to which the previous paragraph of this complaint refers.

"IV. That, the first period mentioned in the condition to which reference has been made having expired, the purchaser, Luis Arán, petitioned the registrar of property of this city to enter, and the latter did enter, the marginal note of consummation opposite the entry of inscription of the contract of sale referred to; but the plain-

tiff now alleges that said Luiz Arán never did consummate the purchase and sale which was the object of the contract inscribed, nor does such consummation of the same appear from the books of the registry, notwithstanding the extension of two years which governed said sale have elapsed.

"V. That, in conformity with the second clause of deed No. 99, to which reference is made in the second paragraph of this complaint, the plaintiff erected on said lot with his own money the following buildings:

" '(a) A building of bricks and mortar for two dwelling houses, consisting of one main part which measures 22 meters in length by 10 on each side, and the two ells or wings which extend at the sides measure 9 meters in length by 6 in width each.

" '(b) Another building of bricks and mortar and of wood which measures 25 meters in length by 7 in width.'

"The fair value of these buildings is $6,500 more or less.

"VI. That, before the extension or second period which the plaintiff had for its repurchase expired, the latter made a real and effectual purchase of said lot, as appears by deed No. 561 executed in this city on the 5th of September, 1902, before the notary, Mariano Riera Palmer, of which a copy duly certified by said notary is filed with this complaint marked 'Exhibit C' in order that it may be considered as a part hereof.

"And the plaintiff further alleges that by said deed there was constituted a voluntary mortgage in favor of the vendor, Luis Arán, upon the property sold in order to secure the latter for $2,200, the deferred payment of a part of the price for which the transfer was made. Plaintiff alleges that this deed was not inscribed in the registry of property of this city.

"VII. The plaintiff alleges that from one year previous to the date of execution of the deed No. 98 of April 2, 1898, to which reference is made in the first paragraph of this complaint, he has been the sole proprietor, and has been from that date until now and still continues in the full and peaceful possession of the lot and of the buildings described and specified in the fifth paragraph of this complaint exercising all the manorial rights as such owner and possessor, without his ever having been deprived of such possession nor disturbed in the same; and that said possession has been publicly and notoriously held.

"VIII. That the plaintiff has paid in full the mortgage which Luis Arán held upon the property purchased, the corresponding deed of release and cancellation having been executed by his widow, Fran-

cisca Arán, in her capacity as administratrix of the estate of the deceased, Luis Arán y Lancy; the execution of which release was ordered by a judgment of this honorable court dated February 11, 1909. There are filed herewith the deed of cancellation of mortgage executed under No. 144 on the 9th of March, 1909, before the notary, Mariano Riera Palmer, and a copy of said judgment certified by the secretary of this court, in order that they may be considered a part of this complaint, said documents being marked 'Exhibit D' and 'Exhibit E,' respectively.

"IX. That Camilo Suriñach, in the name and representation of his minor children, now the defendants, brought a certain suit in the United States Court for Porto Rico against Francisca Arán in her capacity as administratrix of the estate of the deceased, Luis Arán, for the collection of a debt, and obtained a judgment in their favor on the 19th day of July, 1909, for the sum of $2,037.89 and $38.80 costs.

"X. That the marshal of the United States Court for Porto Rico asked and obtained from the substitute registrar of property of this city, in order to execute said judgment, the annotation of an *embargo* (attachment) upon the lot described in the first paragraph of this complaint as though said lot were really the property of the defendant in that proceeding, Luis Arán; but this plaintiff now alleges that the ownership of said lot was and is subject to the fulfilment of the determining condition which affected it; and that neither Luis Arán nor his heirs and legal representatives ever asked that the sale of the lot be consummated—a matter which, as has before been said, was pending the extension or second period of two years contained in the third clause of deed No. 99, executed in this city on the 2d of April, 1898, before the notary, Juan Z. Rodríguez, to which reference is made in the second paragraph of this complaint.

"XI. That under the mistaken belief that said lot was the property of Luis Arán, the marshal of the United States Court for Porto Rico sold at public auction in the building called 'Military Headquarters,' situated on McKinley Street of this city, all the right, title or interest which Luis Arán might or could have in said lot; and at the holding of said auction sale—that is, on the 13th day of September, 1909—there appeared, as the sole bidder and purchaser, Lawyer Fernando Vázquez in his capacity as attorney in fact and legal representative of the present defendants, and offered for said lot the sum of three hundred dollars ($300), an amount for which

said lot was adjudged to them, said marshal having executed to them the corresponding certificate of sale.

"XII.  The plaintiff alleges that the annotation of the attachment made upon the lot above-described on the margin of the seventh inscription on page 245, turned, book 45 of this city, property 659 of the registry of property of this city, is null and without legal force or effect on account of having been made *pendente conditione* and when it had not yet been asked by Luis Arán or his heirs and legal representatives that the registrar of property make the entry of the annotation of the definite consummation of the sale which was the subject of said seventh inscription.

"XIII. The plaintiff alleges that the auction and sale of said lot was made for a price extraordinarily low which sustained no equitable proportion to the value of the lot sold, the fair price of which is about $2,700—that is, nine times as much as was obtained at the auction.

"XIV. The plaintiff now alleges that the legal representative of the defendants—that is, their father, Camilo Suriñach—was an employe and partner of the firm of J. Tornabells & Co., from whom the plaintiff first acquired said lot; and he alleges also that said Camilo Suriñach was liquidator of said commercial house and also an employe of the commercial house called 'L. Arán' on the dates when the plaintiff executed the deeds Nos. 98 and 99, to which reference is made in the first and second paragraph of this complaint.  And the plaintiff now alleges that, according to the best of his information and belief, Camilo Suriñach knew and had personal knowledge of the transactions, negotiations and operations had between the plaintiff and Luis Arán with reference to the sale of said lot.

"XV. The plaintiff also alleges that, according to his best information and belief, Camilo Suriñach knew of his own knowledge that said lot, although inscribed in the registry of property under a determinative condition, was and is the exclusive property of the plaintiff, and that the latter was and had been for more than 13 years in possession of said lot; and plaintiff likewise alleges that, according to his best information and belief, said Camilo Suriñach maliciously and fraudulently and with the object of prejudicing the interests of plaintiff, in his capacity as legal representative of the defendants, pointed out the said lot as real estate of Luis Arán while he knew that the same pertained and pertains legally and justly to the plaintiff.

"XVI. The plaintiff also alleges that, according to his best information and belief, the attorney in fact and legal representative of the plaintiffs in said auction sale before the Federal Court, now

the defendants, Lawyer Fernando Vázquez, knew of his own knowledge that said lot and the buildings on it constructed were and are of the absolute property of the plaintiff.

"XVII. That of the advertisement of the auction sale which was held by the marshal of the Federal Court neither the plaintiff nor Francisca Arán, administratrix of the estate of the deceased Luis Arán, defendant in that proceeding before the Federal Court, could have had or in fact had notice, on account in the first place of there not being included in said advertisement of auction the buildings on it contained and constructed at the expense of the plaintiff, which, on account of their dimensions and the value which they have and of the long time they have been built, are very much more important than the lot; and also because the description of said lot is very similar to that of others which are situated in the same locality or neighborhood of this city; and in the second place the plaintiff had no notice of said auction on account of said advertisement having been published in a newspaper of such small circulation as is that of the local sheet called *La Bandera Americana;* the plaintiff, for those reasons, not having been able to make opposition to the auction at the proper time by utilizing the means which the law gives him.

"XVIII. That from the date of the sale made by the marshal of the Federal Court until the present has been a period of less than one year.

"XIX. The plaintiff alleges that the annotation of the attachment, letter 'A' and the inscription of the sale at public auction, the annotation being made on the margin of the seventh inscription, on page 245, turned, book 45, property 659, of Mayagüez, and the inscription being made on page 246, book 45, property 659, of Mayagüez, eighth inscription, prevent this plaintiff from inscribing in his favor deed No. 561 executed in this city on the 5th of September, 1902, before Notary Mariano Riera Palmer, to which reference has been made in the sixth paragraph of this complaint.

"In consideration of the premises, the plaintiff prays this honorable court to enter judgment in his favor, declaring:

"First, that the lot described in the first paragraph of this complaint is the exclusive property of the plaintiff.

"Second, that the buildings described and specified in the fifth paragraph of this complaint are the exclusive property of the plaintiff.

"Third, that the attachment made by the marshal of the District Court of the United States for Porto Rico, under date of August 7, 1909, is null and lacking in legal force or effect; and, therefore, that the total cancellation of the annotation of attachment, letter

'A,' made on the margin of the seventh inscription, on page 245, turned, of book 45 of Mayagüez, property No. 659, in the Registry of Property of Mayagüez, be directed.

"Fourth, that the sale made at public auction of the property and lot attached by said marshal is null and has no legal force or effect; and, therefore, that the cancellation of the eighth inscription, entered on page 246 of book 45 of Mayagüez, property No. 659, in the registry of property of this city, be directed; and

"Fifth, that proper orders be given to the secretary of this court to issue the corresponding mandates in duplicate to the registrar of property of this city, to the end that the latter proceed to enter the cancellations referred to, so that this plaintiff may be able to inscribe in his favor deed No. 561 executed in this city before the notary, Mariano Riera Palmer, under date of September 5, 1902; and

"Sixth, that the plaintiff recover from the defendant all the costs and expenses which have arisen herefrom, including a reasonable amount as attorney's fees for the attorney of the plaintiff.

"The plaintiff also prays this honorable court to be pleased to issue an order for a preliminary injunction directed to Camilo Suriñach, his agents, employes, attorneys in fact and lawyers, or any other person whatsoever under his supervision, requiring him as representing his minor children, now defendants, to abstain from in any manner or form prosecuting or pressing the action or proceeding begun by Camilo Suriñach against Pedro Muñiz et al. for dispossession, presented in the secretary's office of this court under No. 2867, by which action or proceeding the plaintiffs therein, now defendants, are attempting to dispossess of the property or lot described in the first paragraph of this complaint, Pedro Muñiz, Ramón Aldecón, Etanislao Méndez, María Alors and José Villabol, alleging that they are found on said lot without right and without paying any compensation, until the main suit begun by plaintiff by this action presented before this court. And plaintiff also prays the honorable court to be pleased immediately to issue an interlocutory order against said defendant, Camilo Suriñach, in his capacity as legal representative of defendants and against his agents, servants, employes, lawyers or any other person who may be acting under his supervision, prohibiting them from further proceeding in said action brought as No. 2867, and postponing the trial set therein for to-morrow; and likewise that said Camilo Suriñach be enjoined in the capacity which he assumes from alienating, transferring, mortgaging, or in any way encumbering the lot to which reference is made in this complaint, fixing a day and hour at which they may appear to

explain the reasons, if any they .have, why said preliminary writ of injunction should not be granted; and that, upon the trial of said cause, said injunction be made perpetual; all upon the giving of a bond which the plaintiff hereby offers to have executed in such sum as the honorable court may fix:

"And, finally, plaintiff prays the honorable court that he be granted such other remedy as may be consonant with good conscience, justice and the equity of the case.    (Signed) F. H. Dexter and José Sabater, Attorneys for Plaintiff."

It will thus be seen that the facts set up in the two complaints are substantially identical.   The complainant had the actual title to the property in question, but failed to record it. Creditors of record owner attached the property and obtained a deed as a result of proceedings in the Federal Court.   The prayers of the complaints differ somewhat, but they agree in the essential things, namely, that the marshal's levy and deed be annulled, that the complainant's title be recognized and that any record in the registry of property adverse to such title be canceled and that defendants be restrained from exercising any act of dominion over the property.   In the complaint in the Mayagüez court the petition is also made that the buildings erected on the land be also declared to be the property of the complainant, but this is not an essential difference, as the accessory must follow the principal, and the buildings were fully described in the Federal Court complaint and a special point was there made that the advertisement of the marshal's sale was in bad faith inasmuch as it did not include such buildings in the advertisement.

The special master's report found that the complaint was without equity.   To this report the complainant in the Federal Court filed an exception, wherein he objected to the failure of the master to find: First, that although the complainant showed that a legal title to the property in question was in the respondents therein, he also showed that the complainant had been in possession of said property for a period of more than 10 years and was then in possession of and was the real

equitable owner of the same, the respondents holding only the bare legal title; second, that though the respondents therein were third parties in accordance with the Mortgage Law of Porto Rico, the complainant showed that the respondents acted fraudulently and in bad faith and, therefore, said respondents were *mala fide* third parties and as such were not entitled to the privileges of *bona fide* purchasers (*terceros*) in accordance with said Mortgage Law of Porto Rico; third, that the complainant showed that the legal title of the respondents herein was tainted with fraud and bad faith; fourth, that the complaint showed that the vital question involved in this suit was one of fact, to wit, whether or not the respondents acted fraudulently and in bad faith and that, therefore, no question of law could be raised in the manner in which the complaint was framed. In these exceptions it more clearly appears how the complainant regards the suit and the action of the special master. It was essentially a suit for the nullity of the title and deeds of the respondents and for the cancellation in the registry of property of all adverse claims existing in favor of the respondents and against the appellant. Such is also the purpose of the present suit.

Much stress is laid on the fact that in the report of the special master mention is made of the legal title of the respondent, Suriñach. Appellant insists that the suit in the Federal Court was a suit in equity and was directed to the special equity powers of the Federal Court.

The respondents, on the other hand, maintain that the present suit is equitable in its character and is not the kind of a lawsuit which, by the chancery jurisdiction and procedure, is distinguished from a suit in equity. The action begun in the District Court of Mayagüez if it had been commenced in any State where the common law prevails and the distinction between law and equity exists would be called equitable rather than legal. Law actions usually are brought to recover compensation or specific property, where the plain-

tiff is out of possession, and are triable by a jury. An action for nullity such as the present, we believe, would belong exclusively to the jurisdiction of a court of equity. There is force in this argument if the Federal Court, in matters depending upon diverse citizenship, has any special chancery jurisdiction. If it has no such special jurisdiction in such cases, then any bill of complaint filed in that court, where jurisdiction springs from the diverse citizenship of the parties, by whatever name such bill may be called, can have no other purpose than to give the complainant such relief or remedy as he has been granted by the Civil Code or other laws giving equal protection to all who have interests or rights in Porto Rico. We do not think it necessary to decide specifically the nature of the complaints viewed from either technical standpoint. The fact remains that in each complaint the complainant was seeking the nullity of certain alleged fraudulent transactions and the cancellation in the registry of property, which clouded the title of the particular property. The exception to the report of the special master demonstrates this conclusion. However erroneous the view of this special master may have been, what he did essentially decide was that the complainant was entitled to obtain neither the nullity nor the cancellation that he sought and that this denial was based upon the same facts and equivalent petitions as made in the suit at bar.

The decree in the Federal Court was entered on a demurrer, but it was final, as it was, as we have seen, a judgment on the merits. In equity jurisprudence a final decree is a dismissal of the bill. Daniell's Chancery Pleading and Practice, 6th American Edition, 994, and note; 16 Cyc., 471.

The principles governing *res adjudicata* have been discussed by this court in two cases: *González* v. *Méndez*, 15 P. R. R., 682; 15 Dec., 701; *Calaf et al.* v. *Calaf*, 17 P. R. R., 185.

Here the facts were identical; the relief sought practically identical, and the cases substantially the same. The

suit was identically the same action that was filed in the Federal Court, whatever its technical designation. The decision of the Federal Court was on the merits. All the elements necessary for a case of *res adjudicata* coexist.

The judgment must be affirmed.

*Affirmed.*

Chief Justice Hernández and Justices MacLeary, del Toro and Aldrey concurred.